Whaley, Chief Justice,
delivered the opinion of the court:
Plaintiff and defendant entered into a contract on October 17, 1938, under which plaintiff was to construct an extension to the then existing steam heating plant and install a new steam distribution system at the Naval Ammunition Depot, Fort Mifflin, Pa.
Plaintiff commenced the work but did not complete the project. With the extended time for completion, the work should have been completed on June 2, 1934, but the plaintiff continued its activities until July 21, 1934, when it withdrew its force and ceased working. After the plaintiff had left the site of the project, the contracting officer on August 1, 1934, acting under Article 9 of the contract, terminated plaintiff’s right to proceed with the work. This article provided as follows:
Art. 9. Delays — Damages.—If the contractor refuses or fails to prosecute the work, or any separable part thereof, with such diligence as will insure its completion within the time specified in article 1, or any extension thereof, or fails to complete said work within such time, *283 the Government, may, by written notice to the contractor, terminate his right to proceed with the work or such part of the work as to which there has been delay. In such event the Government may take over the work and prosecute the same to completion, by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby. If the contractor’s right to proceed is so terminated, the Government may take possession of and utilize in completing the work such materials, appliances, and plant as may be on the site of the work and necessary therefor. If the Government does not terminate the right of the contractor to proceed, the contractor shall continue the work, in which event the actual damages for the delay will be impossible to determine and in lieu thereof the contractor shall pay to the Government as fixed, agreed, and liquidated damages for each calendar day of delay until the work is completed or accepted the amount as set forth in the specifications or accompanying papers and the contractor and his sureties shall be liable for the amount thereof: Provided, That the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including but not restricted to, acts of God, or of the public enemy, acts of the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes: Provided further, That the contractor shall within 10 days from the beginning of any such delay notify the contracting officer in writing of the causes of delay, who shall ascertain the facts and the extent of the delay and extend the time for completing the work when in his judgment the findings of fact justify such an extension, and his findings of facts thereon shall be final and conclusive on the parties hereto, subject only to appeal, within 30 days, by the contractor to the head of the department concerned, whose decision on such appeal as to the facts of delay and the extension of time for completing the work shall be final and conclusive on the parties hereto.
It is the plaintiff’s contention that the defendant cancelled the contract and it brings suit for damages in the sum of $62,142.05, but the brief in its behalf covers items aggregat *284 ing $61,978.33 only, and these items will be considered in the order and amounts as they appear in the brief.
The first claim is for $8,325.00, which plaintiff alleges is a loss due to error in defendant’s plans, delay in defendant’s surveys, and delay in approving plaintiff’s plans and drawings. This being a construction contract, the specifications were necessarily accompanied by contract drawings, which are identified in the specifications. They were designated as for distribution trenches and piping, profiles, details, and boiler house equipment, plans, elevation and details and foundation plan in the central heating plant.
Article 25 of the General Provisions forming part of the specifications required marked duties in the furnishing of its drawings by the plaintiff. It provided as follows:
25. Special drawings.- — -Wherever required by the special specifications or otherwise considered by the Government necessary the contractor shall make special or detail drawings in amplification of the contract drawings or in furtherance of the specifications, before proceeding with the execution of the work. Such drawings shall be submitted to the officer in charge or Chief of the Bureau of Yards and Docks, as may be directed, in the form of blue prints, in duplicate, for consideration, correction, or approval. When approved, one set of these prints will be returned to the contractor so marked. When changes or corrections are necessary one set will be returned to the contractor so noted and he shall proceed as before with the submission of duplicate prints. When any drawing has been approved the contractor shall furnish the officer in charge with additional blue-print copies or with the tracing or an equivalent as regards the facility for printing. If a, tracing is submitted the Government will make such prints as it may require and will return the tracing to the contractor. On the completion of the work the contractor shall, if so directed, furnish the Government with one complete set of Vandyke prints, on cloth, of all approved drawings.. When the work of the contractor is of a nature originating with him, full general and detail drawings shall be furnished to the Government in the form of tracings, or the equivalent as regards facility for printing, which shall, upon approval, become the property of the Government, approved sets or prints being furnished to the contractor. The approval of *285 the general and detail drawings of the contractor will in all cases be of a general nature relating to their sufficiency and compliance with the intention of the contract, and shall not relieve the contractor from errors, discrepancies, or omissions therein contained, which shall be made good whenever found.
Specification 1-09 provided:
1.09. Drawmgs required of the contractor. — Before commencing the installation of any of this wort, the contractor shall submit for approval, and in accordance with the General Provisions, such drawings as may be required, including those showing boilers and boiler-room equipment; piping, structural and reinforcing steel details; ceiling and pipe supports; and special valves and traps.
It will be seen from the above provisions that plaintiff was to prepare and submit a substantial number of drawings. The findings disclose much passing back and forth of drawings with many corrections made by the defendant on plaintiff’s drawings. In fact, the Public Works Office found it in the interest of expediency to cast aside many of plaintiffs drawings and substitute many of its own. If delay occurred in this respect, it does not appear that defendant was responsible for it. The findings indicate no delay whatever by defendant’s officers in the disposition and prompt handling of these drawings. The surveys for the final staking out of the trenches could not be done until defendant’s officers were informed that plaintiff was ready and prepared to do the work for the reason that the stakes had to be placed at the last moment before the work was commenced, otherwise they might be displaced. When plaintiff indicated his readiness to excavate, stakes were furnished promptly. We can find no delay in the furnishing of surveys.
Defendant’s originally planned layout of the steam trench system could not be followed in its entirety. In places it had to be relocated, due in two or three instances to physical obstructions, which were not taken account of by the defendant in its original plans. The contract provided for such contingencies by giving the defendant the right to order in writing the necessary changes with attendant increase or *286 decrease in compensation. Plaintiff complains of some 200 changes. The number of changes depends upon how the count is made. However, there were, in fact, numerous changes. All appear to be taken care of by two change orders, “A,” and “B,” the first issued to plaintiff and the second to its successor in the work, its surety, The Fireman’s Fund Indemnity Company. (See The Fireman's Fund Indemnity Company v. United States, 93 C. Cls. 138.)
There is nothing to indicate such defective plans or adherence to them as to justify a claim for delay or dilatory action by the defendant’s officers in the disposition of plaintiff’s plans and drawings. There can be no recovery on this item.
The next claim is for $8,486.30 and is exclusive of the item considered above for loss on account of delay and is represented as the cost of work not included in the original contract and not covered by change orders issued to the plaintiff. Plaintiff contends that the Board on Changes failed to act and the contention is made that, in view of this inaction, it is now within the power of the court to determine the amount.
Article 27 of the General Provisions forming part of the specifications provided:
27. Adjustments in price and time owing to changes. — In case of changes as contemplated by article 3 of the contract, the cost thereof, and any change in the time for performance involved shall be estimated by the officer in charge and reported by him to the Chief of the Bureau of Yards and Docks. If his estimate of cost exceeds $500, estimates of cost and time shall be made by a board appointed by or under the direction of the Chief of the Bureau of Yards and Docks,. consisting of two officers or other representatives of the Government and one representative nominated by the contractor, which estimates shall be reported to the chief of said bureau. The Chief of the Bureau of Yards and Docks as contracting officer, shall in all cases determine the change, if any, in price and time involved, subject to the right of appeal provided for in article *287 15 of the contract. In determining the change in price the cost of additions shall be the estimated actual cost to the contractor and the cost of deductions shall be the estimated cost to the contractor as of the time when the contract was made. In arriving at the amount of the change, due allowance shall be made in the discretion of the contracting officer for overhead and general expense, plant charges, and other expense items of a similar nature. To all estimates of cost 10 percent shall be added for contractor’s profit.
The Board appointed under the provisions of this article neither formally met nor made decisions, although requested so to do by the plaintiff. The Board, however, had no authority to issue Change Orders, this authority being vested solely in the Chief of the Bureau of Yards & Docks, the contracting officer. The Board, under Article 27 of the General Provisions of the specifications, functioned only when the estimate of the officer in charge exceeded $500, and, in the absence of such an estimate, the Board had nothing to consider and no cause for meeting formally together. The plaintiff appears to have misunderstood the jurisdiction of the so-called “Board on Changes.” The second Change Order, “B,” was issued to the surety, who undertook completion of the work under the contract, and the total of the change order, $3,442.84, has been paid by the defendant or included in judgment against it. (See Fireman's Fund Indemnity Company, supra.) The Change Order, “A,” which was issued to plaintiff, was for $265.72 only and was not within the jurisdiction of the Board. Lack of satisfactory proof, touching material matters, prevents an extension of findings in respect to the claim of $8,486.30.
The third claim made by the plaintiff is for $1,270.41 which it states as “representing an amount withheld from plaintiff on account of an alleged underpayment by plaintiff of its employees.” The contentions made with respect to this item are somewhat extensively set forth in the findings. The plaintiff took no exception to the commissioner’s findings on the subject of the deduction of this sum and it is incorporated in the Special Findings of Fact in Findings *288 5 and 11. The matter was investigated’ by the Public Works Administration and the Administrator thereof made his conclusions June 22, 1934. The sum in dispute was withheld under Article 16 (e) of the contract which provided:
The contracting officer may withhold from the contractor so much of accrued payments as may be necessary to pay to laborers or mechanics employed by the contractor or any subcontractor on the work, the difference between the rate of wages required by this contract to be paid to laborers or mechanics on the work and the rate of wages actually paid to such laborers or mechanics.
It was held in Fir emanas Fund Indemnity' Covn/pa/mj, supra, that it was incumbent on the plaintiff to prove that it complied with the contract and, in the absence of such proof, the decision made must stand. The same situation arises in the instant case and the contracting officer’s decision must stand.
There is a small claim for $45.00, representing an alleged assessment against plaintiff on the ground that it worked certain of its employees over eight hours on a particular day in violation of Article 11 (c) of the contract. As a matter of fact, this assessment was not made, as is shown in Finding 11.
Plaintiff also claims the sum of $11,399.80 as representing monies withheld and profits lost by it as a result of the unlawful breach of the contract by the defendant. Plain- . tiff arrives at the sum of $11,399.80 by taking twenty percent of the original contract price of $56,999.00 for overhead and profit, equally divided. The overhead is purely an estimate and the anticipated profit speculative. The facts show no breach of the contract was made by the defendant and therefore there can be no recovery on these items.
There is a claim made for the loss of tools taken by the defendant for use in completing the contract and only partially repossessed. The proof on this item is not satisfactory.
Plaintiff’s last claim is for $27,390.02, representing plaintiff’s alleged liability to its bonding company in completing the contract. Our decision that plaintiff cannot recover on the claims above mentioned disposes of this claim.
*289 Plaintiff is not entitled to recover and its petition is dismissed. It is so ordered.
Madden, Judge; Jones, Judge; and Littleton, Judge, concur.
Whitakek, Judge, took no part in the decision of this case.